UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

O'DELL WILLIS,

                              Plaintiff,            5:14-CV-1306
                                                    (GTS/ATB)
v.

THE COUNTY OF ONONDAGA,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF K. FELICIA DAVIS                   K. FELICIA DAVIS, ESQ.
   Counsel for Plaintiff
P.O. Box 591
Syracuse, NY 13201-3049

HON. ROBERT A. DURR                          CAROL L. RHINEHART, ESQ.
Onondaga County Attorney                     Deputy County Attorney
   Counsel for Defendant
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment civil rights action by Odell Willis

("Plaintiff") against the County of Onondaga ("Defendant"), is Defendant's motion for summary

judgment. (Dkt. No. 13.) For the reasons set forth below, Defendant's motion is granted and

Plaintiff's Complaint is dismissed.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges that, between approximately December 2011 and October 2014, he has been racially and sexually discriminated against and harassed during his employment at the Onondaga County Sheriff's Office in numerous ways including, but not limited to, the following: (1) unwanted sexual touching and attention by Sgt. B and fellow deputies; (2) graphic sexual comments by Sgt. B and fellow deputies; (3) racially hostile comments, epithets and jokes by fellow deputies; (4) racially and sexually motivated abuse of authority by Sgt. B., including retaliation for making a complaint of racial and sexual discrimination; and (5) a failure by Defendant to take effective action to stop such harassment. (*See generally* Dkt. No. 1.)

Based on these allegations, Plaintiff asserts six claims against Defendant: (1) a claim that Defendant discriminated against him based on his race and/or sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) a claim that Defendant discriminated against him based on his race and/or sex, in violation of the New York State Human Rights Law, N.Y.  Exec. Law § 296 ("NYSHRL"); (3) a claim that Defendant subjected him to intentional infliction of emotional distress, in violation of New York State common law; (4) a claim that Defendant subjected him to negligent infliction of emotional distress, in violation of New York State common law; (5) a claim of breach of contract in violation of New York State common law, arising from Defendant's breach of the anti-harassment provision of its collective bargaining agreement with the Deputy Sheriff's Benevolent Association, under which Plaintiff is a covered employee; and (6) a claim that Defendant harassed him based on his race and/or sex, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").  (*Id.*)

As relief for these violations, Plaintiff requests, *inter alia*, punitive damages under Section 1981, and the NYSHRL. (*Id.*)

**B.    Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendant in its statement of material facts and either expressly admitted or inadequately denied by Plaintiff in his response thereto. (*Compare* Dkt. No. 13, Attach. 21 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 19 [Plf.'s Rule 7.1 Response].)

<u>The Parties</u>

1.    Odell Willis ("Plaintiff") is an African-American heterosexual male.

2.    Plaintiff has been employed as a deputy sheriff for Onondaga County Sheriff's Office Custody Department since October 26, 1987.

3.    He is one of two African-Americans who work in the Transport Unit of the Custody Department.[1]

---

[1]    After expressly admitting the fact asserted by Defendant, Plaintiff attempts to assert another fact. (Dkt. No. 19, at ¶ 3 [Plf.'s Rule 7.1 Response].) The fact asserted by Defendant will be deemed admitted. *See Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit'"); *CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'"). Setting aside that the additional fact that Plaintiff attempts to assert follows an express admission, the additional fact will be ignored for each of two alternative reasons. First, to the extent that it attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, that the words "who work in the Transport Unit" mean "who work the same shift in the Transport Unit"), that attempt is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1. *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of *asserted* facts, not the disputation of *implied* facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's

4.      The County of Onondaga ("Defendant") is a municipal corporation duly incorporated pursuant to the laws of the State of New York, and employs more than 15 employees.

### The Onondaga County Sheriff's Office

5.      The Onondaga County Sheriff's Office is a paramilitary organization with Sheriff Conway serving as its highest ranking official.

6.      The chain of command beneath the Sheriff in descending order includes undersheriff, chief, assistant chief, captain, lieutenant, sergeant and deputy.

7.      The Sheriff's Office Duty Manual contains the written standards of conduct for all members of the Sheriff's Office.[2]

8.      The Sheriff's Office Policy and Procedure Directives Manual is the official compilation of written statements of policy and procedures.[3]

---

purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"). Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[2]      (*Compare* Dkt. No. 13, Attach. 21, at ¶ 7 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 7 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)

[3]      (*Compare* Dkt. No. 13, Attach. 21, at ¶ 8 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 8 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)

9. Employees of the Sheriff's Office must comply with all provisions of the Duty Manual and all provisions of the Policy and Procedure Directives Manual.[4]

10. Employees of the Sheriff's Office who fail to comply with the Duty Manual and/or the Policy and Procedures Directives Manual are subject to disciplinary action.[5]

11. Generally, such disciplinary action is progressive and ranges in severity beginning with a counseling or supervisor's memorandum (which is the least severe action), an oral warning, a written reprimand, and an article charge (which is the most severe action).[6]

12. Supervisor's memoranda are not formal discipline and may be issued by a sergeant or higher ranking officer without the Administration's approval.[7]

---

[4] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 9 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 9 [Plf.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting such denial].)

[5] Plaintiff attempts to deny what he asserts is an "implication" of the fact asserted by Defendant (specifically, the implication that the term "disciplinary action" means "adequate disciplinary action"). (Dkt. No. 19, at ¶ 10 [Plf.'s Rule 7.1 Response].) This denial is ineffective for each of the two alternative reasons stated above in note 1 of this Decision and Order. First, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1. *Yetman*, 2015 WL 4508362, at *10; *cf. Baity*, 51 F. Supp. 3d at 418; *Goldstick*, 2002 WL 1906029, at *1. Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[6] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 11 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 7 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)

[7] Plaintiff attempts to deny what he asserts is an "implication" of the fact asserted by Defendant. (Dkt. No. 19, at ¶ 12 [Plf.'s Rule 7.1 Response].) This denial is ineffective for each of the two alternative reasons stated above in note 1 of this Decision and Order. First, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1. Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

13. Any other form of discipline (i.e., oral warning, written reprimand or Article charges) may not be issued by a sergeant or lieutenant without the Administration's approval.[8]

14. All deputy sheriffs are members of the local union, which is the Deputy Sheriff's Benevolent Association of Onondaga County, Inc. ("DSBA"), and are subject to the terms of the Collective Bargaining Agreement between Defendant and the DSBA.

15. The Collective Bargaining Agreement sets forth the Grievance and Arbitration Procedure for resolving grievances.

16. The Sheriff's Office Directive entitled "Harassment" states the office's written policy against harassment, discrimination and retaliation in the work place, defines the prohibited conduct, and sets forth the procedures for resolving incidents of discrimination.[9]

17. All newly hired deputy sheriffs receive cultural diversity training as part of their training for employment as deputies.[10]

---

[8] Plaintiff denies the fact asserted by Defendant "in part." (Dkt. No. 19, at ¶ 13 [Plf.'s Rule 7.1 Response].) This partial denial is ineffective for each of two alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3). *See Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3]). Second, either the partial denial attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the words "may not be issued" also mean "may not be recommended"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not). *See, supra,* note 1 of this Decision and Order.

[9] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 16 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 16 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)

[10] Plaintiff denies the fact asserted by Defendant "in part." (Dkt. No. 19, at ¶ 17 [Plf.'s Rule 7.1 Response].) This partial denial is ineffective for each of two alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3).

18.     In addition, this cultural diversity training is reinforced through yearly "in-service training" sessions.[11]

19.     Plaintiff is familiar with the Sheriff's Office Written Directive addressing Harassment and Retaliation as well as Defendant's Harassment and Anti-Retaliation Policy and has received cultural diversity training through the Sheriff's Office.[12]

### Plaintiff's Litigation History Against Defendant County

20.     During Plaintiff's employment with Defendant, he has been involved in three civil rights employment actions in which he has made allegations of a racially hostile work

---

*Aktas*, 877 F. Supp. 2d at 5 n.3. Second, either the partial denial attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the words "cultural diversity training" means training that was more than "brief" and "cursory"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.

[11]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 18 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 18 [Plf.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting such denial].)  Either Plaintiff's denial attempts to challenge what he perceives to be an implication of the term "reinforced" (specifically, the implication that the term means that the training was neither "cursory" nor "inadequate"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.

[12]     Plaintiff denies the fact asserted by Defendant "in part."  (Dkt. No. 19, at ¶ 19 [Plf.'s Rule 7.1 Response].) This partial denial is ineffective for each of two alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3). *Aktas*, 877 F. Supp. 2d at 5 n.3. Second, either the partial denial attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the words "cultural diversity training" mean training that was "adequate"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.

environment, a sexually hostile work environment and/or retaliation.[13]

21.     More specifically, in 1997, Plaintiff was one of several African-American deputy sheriffs who brought a civil rights action against Defendant claiming a racially hostile work environment; that action was dismissed with prejudice in 2001.[14]

22.     In 2004, Plaintiff was one of a number of African-American deputy sheriffs who again brought a civil rights action claiming that the County knowingly permitted a racially hostile work environment to exist and continue.[15]

---

[13]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 20 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 20 [Plf.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting such denial].)  While Plaintiff asserts that his claims in "the lawsuit" were for racial discrimination, he does not identify which lawsuit he is referencing, nor does he cite record evidence that precludes the possibility that *other* allegations (i.e., allegations of sexual discrimination and retaliation) were made in the 1997 and 2004 actions. In any event, the allegations in the above-stated fact are listed in the disjunctive, rendering the above-stated fact true (given that Plaintiff's current action asserts claims of not only of racial discrimination but also of sexual discrimination and retaliation).

[14]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 21 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing ¶ 17 of Rhinehart Aff., which establishes above-stated fact] *with* Dkt. No. 19, at ¶ 21 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact "in part"].)  Plaintiff denies the fact asserted by Defendant "in part" on the ground that his "initial lawyer withdraw and black deputies were left without representation leaving them procedurally vulnerable."  This partial denial is ineffective for each of two alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3). *Aktas*, 877 F. Supp. 2d at 5 n.3.  Second, either the partial denial attempts to challenge what Plaintiff perceives to be an implication of the fact asserted (specifically, the implication that Plaintiff was at all times represented by counsel during the proceeding), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.

[15]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 22 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing ¶ 17 instead of ¶ 18 of Rhinehart Aff., which cites record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 22 [Plf.'s Rule 7.1 Response, admitting variation of above-stated fact]; *see also Barksdale v. Onondaga Cty. Sheriff's Dep't*, 04-CV-0828, Am. Compl. at ¶¶ 97-107 [N.D.N.Y. filed Aug. 5, 2004] [supporting above-stated fact].)

23. In that action, Plaintiff alleged that he was subjected to the following: (1) a racially hostile environment and disparate treatment; (2) a sexually hostile work environment and disparate treatment; and (3) retaliation for having complained about the foregoing violations.[16]

24. Also in that action, Plaintiff gave sworn testimony of the following: (1) that sometime in 2000 Deputy A made vulgar sexual comments to him including requests to perform oral sex; (2) that in August of 2000 Deputy A pushed a pen into Plaintiff's anus and that, when Plaintiff jumped, Deputy A stated "What's that, an orgasm?"; (3) that sometime in 2000 Deputy D.B. grabbed Plaintiff in a bear hug, forced him over a table and humped him in a sexual manner; and (4) that Deputy D.B. did this because Plaintiff is a black man.

25. Plaintiff's hostile work environment claim proceeded to a jury trial in February 2010; however, he was precluded from offering testimony on his claims regarding sexual harassment because he failed to assert those claims in his EEOC complaint.

26. On February 24, 2010, a jury rendered a verdict in favor of Plaintiff on his hostile environment claim and awarded him $1.00 in damages.

27. After the trial concluded, Plaintiff continued to work in the Transport Unit; he claims that he was harassed during the first three weeks of that continued work.[17]

---

[16] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 23 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing ¶ 18 instead of ¶ 19 of Rhinehart Aff., which establishes above-stated fact] *with* Dkt. No. 19, at ¶ 23 [Plf.'s Rule 7.1 Response, admitting variation of above-stated fact]; *see also Barksdale v. Onondaga Cty. Sheriff's Dep't*, 04-CV-0828, Am. Compl. at ¶¶ 34-39, 97-107 [N.D.N.Y. filed Aug. 5, 2004] [supporting above-stated fact].)

[17] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 27 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 27 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)

28.     More specifically, Plaintiff claims that, at some point during the first or second day after the trial concluded, he found spit on the door of his locker.

29.     Plaintiff also claims that, within one week of the conclusion of the trial, he discovered the contents of his mailbox in the trash.

30.     Plaintiff also claims that, approximately three weeks after the trial in February 2010, a picture of Martin Luther King that was taped to the outside door of his locker was ripped off, leaving just the four corners of the picture remaining taped to the locker.

31.     Plaintiff reported this incident to Sgt. Marshall, who was one of Plaintiff's supervisors at the time.[18]

32.     The day after Plaintiff reported the picture incident, Sgt. Marshall gave him a copy of a computer image of Martin Luther King, which Plaintiff placed on the front of his locker, and it has remained there since.

---

[18]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 31 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 31 [Plf.'s Rule 7.1 Response, admitting above-stated fact "in part"].)  In addition to his admission of the fact asserted by Defendant "in part," Plaintiff states that, "even with reporting the incidents[,] to Plaintiff's knowledge there was no investigation into the events."  Any partial denial by Plaintiff is ineffective for each of four alternative reasons.  First, it fails to expressly state that any part of the fact is denied as required by Local Rule 7.1(a)(3).  Second, it fails to specify which part of the fact is denied as also required by Local Rule 7.1(a)(3).  *Aktas*, 877 F. Supp. 2d at 5 n.3.  Third, either the response attempts to challenge what Plaintiff perceives to be an implication of the fact asserted (specifically, the implication that a "report" of the incident necessarily involves an "investigation" of the incident), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.  Fourth, in any event, in support of his additional factual assertion, Plaintiff cites a paragraph of his affidavit which is expressly qualified by a lack of personal knowledge.  (Dkt. No. 18, Attach. 1, at ¶ 25.)

33.     Further, several days after the picture incident, Sergeant Ames directed deputies during roll call to keep their hands off other people's property.[19]

34.     Thereafter, according to Plaintiff, the harassment abated; as he testified in his deposition on November 25, 2015, "Well, now people pretty much stay [away]–you get little comments; you know, but [it's] a long time in taking a toll."[20]

---

[19]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 33 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 33 [Plf.'s Rule 7.1 Response, admitting above-stated fact "in part"].)  In addition to his admission of the fact asserted by Defendant "in part," Plaintiff states that "no effort was made to address the racial nature of the evidence which occurred concerning Plaintiff." Any partial denial by Plaintiff is ineffective for each of three alternative reasons.  First, it fails to expressly state that any part of the fact is denied as required by Local Rule 7.1(a)(3). Second, it fails to specify which part of the fact is denied as also required by Local Rule 7.1(a)(3).  *Aktas*, 877 F. Supp. 2d at 5 n.3.  *Aktas*, 877 F. Supp. 2d at 5 n.3.  Third, either the response attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the "direct[ion]" by Sergeant Ames involved an "effort . . . to address the racial nature of the events which occurred concerning Plaintiff"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.

[20]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 34 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 34 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)  The Court notes that, in paragraph 26 of an affidavit sworn to on May 16, 2016, Plaintiff asserts that (1) after the mail incident occurred, "[t]he racial harassment continued" and the picture incident occurred, and (2) "White deputies in my unit . . . [continue to] say things to me that [are] inappropriate," such as "'Let me give you my dollar now'" (referencing the dollar in damages that he was awarded by a jury in his second employment civil rights action).  (Dkt. No. 18, Attach. 1, at ¶ 26.)  With regard to the first assertion, even read with the utmost of special liberality, the assertion means merely that the racial harassment continued until the picture incident occurred.  With regard to the second assertion, for the sake of brevity, the Court will not address the issue of, without being accompanied by something else, the statement "Let me give you my dollar now" is racial harassment.  More important is that, on page 18 of his deposition taken on November 25, 2015, in response to the question, "[The harassment continued] [f]rom the day after the judgment until present?" Plaintiff testified, "Well, now people pretty much stay–you get little comments, you know, but a long time in taking a toll."  (Dkt. No. 13, Attach. 4, at 19 [attaching page "18" of Plf.'s Depo. Tr.].)  Of course, as pointed out by Defendant, to the extent that Plaintiff attempts in his affidavit to contradict his deposition testimony, he may not do so.  *Mack v. United States*, 814 F.2d 120, 21 (2d Cir. 1987).

<u>Plaintiff's Current Claims</u>

35.     On March 12, 2014, Sgt. B, one of the day supervisors, ordered Plaintiff and several white deputies to go outside, shovel snow off of the transport vehicles, and move them into the Everson Museum parking garage because of a snow storm.[21]

36.     Approximately five to ten minutes after all of the white deputies had gone outside to comply with the order, Plaintiff informed Sgt. B that there were no keys left.[22]

_____

[21]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 35 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 35 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact "in part"].)  In addition to his denial of the variation of the fact asserted by Defendant "in part," Plaintiff states that "Plaintiff's shift had not started yet, and no order to him should have been made."  Any partial denial by Plaintiff is ineffective for each of three alternative reasons.  First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3).  *Aktas,* 877 F. Supp. 2d at 5 n.3.  Second, either the response attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the order was made during Plaintiff's shift), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not).  *See, supra,* note 1 of this Decision and Order.  Third, Plaintiff's account of events in his affidavit contradict his own written report, in which he stated that Sgt. B gave Plaintiff the order "seconds after I had punched in . . . ."  (Dkt. No. 13, Attach. 11, at 2.)  Moreover, even by Plaintiff's own account of events, after he received the order approximately five minutes before his shift started, he spent approximately three to five minutes finishing his conversation with his mother on his cell phone, and then (after spending some time trying to talk to Sgt. B) *still* refused to comply with the order.  (Dkt. No. 13, Attach. 4, at 51-56 [attaching pages "50" through "55" of Plf.'s Depo. Tr.]; Dkt. No. 18, Attach. 1, at ¶ 56 [Plf.'s Affid.].)  The Court notes that, to the extent that Plaintiff attempts in his affidavit to contradict his deposition testimony, he may not do so.

[22]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 36 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 36 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)  Setting aside the lack of a citation to record evidence actually supporting a denial of the above-stated fact, the Court notes that the citations provided by Plaintiff are to portions of his affidavit that regard his assertion that the order was made before the start of his shift, which is ineffective for the reasons stated above in note 21 of this Decision and Order.

37.     Sgt. B responded that no keys were left because the other deputies had them, and again ordered Plaintiff to go outside to assist the other deputies with the detail.[23]

38.     Plaintiff felt he was being pushed and "everything [he] was holding in . . . just sort of came out"; approaching Sgt. B, he said, "We need to talk" and "I'm tired of the way you've been talking to me."[24]

39.     In response, Sgt. B directed Plaintiff to write a report addressing this incident.[25]

40.     On or about March 14, 2014, Plaintiff wrote a report regarding the incident, and also made a number of accusations against Sgt. B regarding inappropriate conduct; included in this report were three instances of physical contact that allegedly occurred between December 2011 and March 2014.[26]

---

[23]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 37 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 37 [Plf.'s Rule 7.1 Response, denying variation of the above-stated fact but failing to cite record evidence actually supporting denial].)  Setting aside the lack of a citation to record evidence actually supporting a denial of the variation of the above-stated fact, the Court notes that the citations provided by Plaintiff are to portions of his affidavit that regard his assertion that the order was made before the start of his shift, which is ineffective for the reasons stated above in note 21 of this Decision and Order.

[24]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 38 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 38 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact and indeed citing record evidence that supports above-stated fact].)

[25]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 39 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 38 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact and indeed citing record evidence that supports above-stated fact].)

[26]     Plaintiff attempts to deny what he asserts is an "implication" of the fact asserted by Defendant (specifically, the implication that the word "accusations" means "new accusations").  (Dkt. No. 19, at ¶ 40 [Plf.'s Rule 7.1 Response].)  This denial is ineffective for each of the two alternative reasons stated above in note 1 of this Decision and Order.  First, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial

41.     According to Plaintiff, the first instance of physical contact occurred in mid-to-late December 2011 in the presence of 15 to 20 transport members and allegedly involved Sgt. B swiping a bladed hand between Plaintiff's buttocks, creating a wedgie in Plaintiff's uniform pants. The second incident of physical contact occurred in mid-February 2014 and involved Sgt. B allegedly grabbing Plaintiff's buttocks as Sgt. B fell or stumbled; Plaintiff did not report this second incident at the time.  The third incident of physical contact occurred during the first week of March 2014 and involved Sgt. B allegedly putting his hands on Plaintiff's shoulders; Plaintiff did not report this third incident at the time.[27]

42.     Plaintiff acknowledges that Sgt. B did not take these actions "to be sexual with [Plaintiff]" but to get Plaintiff to react.[28]

43.     Plaintiff submitted the report to Sgt. B on or about March 17, 2014.

---

under Local Rule 7.1.  *Yetman*, 2015 WL 4508362, at *10.  Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[27]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 41 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 33 [Plf.'s Rule 7.1 Response, admitting variation of above-stated fact "in part"].) Any partial denial by Plaintiff is ineffective for each of three alternative reasons.  First, it fails to expressly state that any part of the fact is denied as required by Local Rule 7.1(a)(3).  Second, it fails to specify which part of the fact is denied as also required by Local Rule 7.1(a)(3).  *Aktas*, 877 F. Supp. 2d at 5 n.3.  *Aktas*, 877 F. Supp. 2d at 5 n.3.  Third, even if Plaintiff's response could be construed as a partial denial of a specific fact, it fails to cite record evidence actually supporting a denial of the above-stated fact and indeed cites record evidence that supports the above-stated fact.  The Court notes that, to the extent that Plaintiff attempts in his affidavit to contradict his deposition testimony, he may not do so.

[28]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 42 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 42 [Plf.'s Rule 7.1 Response, denying part of a variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact and indeed citing record evidence that supports above-stated fact].)  Setting aside the lack of a citation to record evidence actually supporting a denial of part of the above-stated fact, the Court notes that Plaintiff does not expressly deny the remainder of the fact asserted by Defendant, as required under Local Rule 7.1(a)(3).

44.     Sgt. B also wrote a report, which addressed Plaintiff's failure to follow his orders; he then submitted the report to Lt. Raus, requesting that formal disciplinary action be taken against Plaintiff.[29]

45.     The matter was investigated and, on April 7, 2014, Plaintiff was issued a supervisor's memorandum for failing to obey orders, being loud and argumentative toward Sgt. B and making derogatory comments.

46.     Plaintiff admits that, while he initially went to the key box to grab car keys, he never complied with Sgt. B's order to assist shoveling snow off the transport vehicles and assist moving them to the garage; Plaintiff now claims he was still cold from when he came into work.[30]

47.     Because Plaintiff's Miscellaneous Report of March 14, 2014, also included allegations of inappropriate conduct by Sgt. B, Plaintiff was directed by Sgt. Marshall to submit separate reports addressing each of the allegations against Sgt. B.

48.     Plaintiff complied with Sgt. Marshall's request and submitted five separate Miscellaneous Reports.

---

[29]     After expressly admitting the fact asserted by Defendant, Plaintiff attempts to assert another fact.  (Dkt. No. 19, at ¶ 44 [Plf.'s Rule 7.1 Response].)  The fact asserted by Defendant will be deemed admitted.  *Washington*, 2009 WL 1585947, at *1 n.2; *CA, Inc.*, 2015 WL 1611993, at *2 n.3.  The additional fact that Plaintiff attempts to assert will be ignored for each of two alternative reasons stated above in note 1 of this Decision and Order.  First, to the extent that it attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, an implication the that writing and submission of the report was wholly without instruction from Lt. Raus), that attempt is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1. *Yetman*, 2015 WL 4508362, at *10. Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[30]     (*Compare* Dkt. No. 13, Attach. 46, at ¶ 7 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 46 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)

49.    The five Miscellaneous Reports allege the following incidents, which were perceived by Plaintiff to be racial harassment, sexual harassment or bullying:

(i)    On or about April 17, 2012, Sgt. B directed Plaintiff to place mail in the appropriate mailboxes; although Plaintiff perceived this to be a form of bullying, he did not report this to any Transport Supervisors at the time. (Plaintiff admits that this was not racial or sexual harassment.)[31]

(ii)    On May 16, 2012, Sgt. B interrupted Plaintiff by not allowing him to speak during roll call when Plaintiff attempted to address a claim that Plaintiff had been skipped for an overtime assignment; Plaintiff perceived this incident to be a form of bullying. (Plaintiff believes that he was skipped for overtime because of his race.);

(iii)    During the first week of April 2014, Plaintiff claims that Sgt. B grabbed Plaintiff's buttocks in an apparent attempt to prevent falling; Plaintiff did not report this incident to any Transport Supervisor at the time;[32]

---

[31]    Plaintiff denies the fact asserted by Defendant "in part." (Dkt. No. 19, at ¶ 49[i] [Plf.'s Rule 7.1 Response].) This partial denial is ineffective for each of two alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3). *Aktas*, 877 F. Supp. 2d 1, 5 n.3. Second, even if Plaintiff's response could be construed as a partial denial of a specific fact, it fails to cite record evidence actually supporting such a denial and indeed cites record evidence that supports the above-stated fact.

[32]    (*Compare* Dkt. No. 13, Attach. 21, at ¶ 49[iii] [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 49[iii] [Plf.'s Rule 7.1 Response, admitting variation of above-stated fact "in part"].) In addition to his admission of a variation of the fact asserted by Defendant "in part," Plaintiff states, "Plaintiff did report this incident." Any partial denial by Plaintiff is ineffective for each of three alternative reasons. First, it fails to expressly state that any part of the fact is denied as required by Local Rule 7.1(a)(3). Second, it fails to specify which part of the fact is denied as also required by Local Rule 7.1(a)(3). *Aktas*, 877 F. Supp. 2d at 5 n.3. Third, to the extent Plaintiff asserts that he eventually complained about this incident a year after the incident, that assertion is taken into account in the variation adopted by the Court.

(iv)     On May 30, 2012, in the presence of several transport members, Sgt. B blocked Plaintiff's path down an aisle requiring Plaintiff to verbally request to get by; although Plaintiff perceived this as an attempt to harass and intimidate Plaintiff, he did not report the incident to any Transport Supervisors.  (Plaintiff admits that this was neither racial or sexual harassment.); and

(v)      Sometime during the third week of December 2011, Sgt. B walked behind Plaintiff and with a bladed hand swiped the crack of Plaintiff's buttocks creating a wedgie in Plaintiff's uniform pants. Plaintiff claims that he spoke to Sgt. Marshall about this incident and they typed a report together but Plaintiff did not submit the report; Plaintiff also claims that he spoke to Lt. Raus about the incident and that the incident was addressed with Sgt. B.  Plaintiff claims that Sgt. B left him alone after this.[33]

50.     Sgt. Marshall investigated the allegations in each of Plaintiff's Miscellaneous Reports.[34]

---

[33]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 49[v] [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 49[iv] [Plf.'s Rule 7.1 Response, admitting variation of above-stated fact "in part"].)  Any partial denial by Plaintiff is ineffective for each of three alternative reasons.  First, it fails to expressly state that any part of the fact is denied as required by Local Rule 7.1(a)(3).  Second, it fails to specify which part of the fact is denied as also required by Local Rule 7.1(a)(3).  *Aktas*, 877 F. Supp. 2d at 5 n.3.  Third, even if Plaintiff's response could be construed as a partial denial of a specific fact, it fails to cite record evidence actually supporting such a denial and indeed cites record evidence that supports the above-stated fact.

[34]     After expressly admitting the fact asserted by Defendant, Plaintiff attempts to assert another fact.  (Dkt. No. 19, at ¶ 50 [Plf.'s Rule 7.1 Response].)  The fact asserted by Defendant will be deemed admitted.  *Washington*, 2009 WL 1585947, at *1 n.2; *CA, Inc.*, 2015 WL 1611993, at *2 n.3.  Setting aside that the additional fact that Plaintiff attempts to assert follows an express admission, the additional fact will be ignored for each of two alternative reasons.  First, to the extent that it attempts to challenge what Plaintiff perceives to be an

51. The investigation included interviewing Plaintiff, Sgt. B and several other members of the Transport Unit, and searching records maintained by Sgt. Marshall and the Sheriff's Office.[35]

52. Sgt. B strongly denied Plaintiff's allegations of harassment, sexual harassment and bullying.[36]

53. After investigating the incidents, Sgt. Marshall found no merit to Plaintiff's allegations and submitted his investigative findings to Lt. Raus.

54. Thereafter, Captain Caiella directed Lt. Raus to investigate the matter further.

---

implication of the fact asserted by Defendant (specifically, the implication that the word "investigated" means "investigated adequately"), the attempt is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1. *Yetman*, 2015 WL 4508362, at *10. Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[35] Plaintiff denies the fact asserted by Defendant "in part." (Dkt. No. 19, at ¶ 51 [Plf.'s Rule 7.1 Response].) This partial denial is ineffective for each of three alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3). *Aktas*, 877 F. Supp. 2d 1, 5 n.3. Second, either the partial denial attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the words "interviewing both Plaintiff and Sgt. B as well as several other members of the Transport Unit" means that Plaintiff sat in on the interviews of the other persons referenced, and the implication that the sentence somehow means that Plaintiff's fellow deputies were *not* "set on a mission by Lt. Raus to sabotage him"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not). *See, supra,* note 1 of this Decision and Order. Third, the record evidence cited by Plaintiff supports, *at most*, the second fact asserted by him, not the first.

[36] Plaintiff denies the fact asserted by Defendant "in part." (Dkt. No. 19, at ¶ 52 [Plf.'s Rule 7.1 Response].) This partial denial is ineffective for each of two alternative reasons. First, it fails to specify which part of the fact is denied as required by Local Rule 7.1(a)(3). *Aktas*, 877 F. Supp. 2d 1, 5 n.3. Second, either the partial denial attempts to challenge what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the words "strongly denied" means "correctly denied"), which is insufficient to create a genuine dispute of material fact, or it attempts to assert an additional material fact that the non-movant contends is in dispute, which must be asserted in a separately numbered paragraph (but was not). *See, supra,* note 1 of this Decision and Order.

55.     Lt. Raus then interviewed all members of the Transport Unit regarding Plaintiff's allegations and submitted his investigation packet to the Captain; no further action was taken.

56.     Defendant has addressed incidents of inappropriate conduct in the Transport Unit when Plaintiff has complained and even when he has not complained.[37]

57.     In November 2013, there was an incident of inappropriate conduct in the Transport Unit involving a rookie deputy being pushed in a shopping cart up and down the hallways while handcuffed to the cart.[38]

58.     The matter was investigated and the individuals involved were issued supervisor's memorandum.

59.     In September 2014, Plaintiff complained that Dep. A punched him in the thigh; he also complained about what he perceived as inappropriate conduct involving Dep. A and several other deputies.[39]

---

[37]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 56 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 56 [Plf.'s Rule 7.1 Response, denying variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)  The Court notes that the record evidence cited by Plaintiff appears to challenge what he perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the word "addressed" means "addressed to Plaintiff's satisfaction").  As stated above in note 1 of this Decision and Order, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1.  *Yetman*, 2015 WL 4508362, at *10.

[38]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 57 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 57 [Plf.'s Rule 7.1 Response, denying part of variation of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact and indeed citing record evidence that supports above-stated fact].)

[39]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 59 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 59 [Plf.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting such denial].)  The Court notes that the record evidence cited by Plaintiff appears to attempt to assert additional material facts that he contends are in dispute.  As stated above in note 1 of this Decision and Order, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

60. This matter was investigated and Dep. A was issued a supervisor's memorandum.[40]

61. Finally, in June 2015, Sgt. Marshall witnessed an incident in which a deputy played a video on his cell phone in the roll call room while in the presence of several deputies including Plaintiff; Sgt. Marshall observed, at the conclusion of the video, a racial slur being repeated numerous times.[41]

62. Sgt. Marshall immediately addressed the incident with Plaintiff and the deputy who played the video.[42]

---

[40] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 60 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 60 [Plf.'s Rule 7.1 Response, denying perceived implication of part of above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)  Plaintiff's response denies what he perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the word "investigated" means "adequately investigated").  As stated in note 1 of this Decision and Order, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1.  *Yetman*, 2015 WL 4508362, at *10.  Moreover, the Court notes that the record evidence cited by Plaintiff does not actually support his assertion that the investigation was not adequate, but supports an assertion that the *discipline* was not adequate (a fact that was never asserted by Defendant).

[41] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 61 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 61 [Plf.'s Rule 7.1 Response, denying part of variation of above-stated fact but failing to cite record evidence that supports denial or controverts above-stated fact].)  The Court notes that the affidavit cited by Plaintiff in his response speculates that Sgt. Marshall "must have watched" the prior portion(s) of the video in which the racial slur was also repeated.  (Dkt. No. 18, Attach. 1, at ¶ 72 [Plf.'s Affid., stating that Sgt. Marshall "must have watched the entire thing"].)  However, that testimony, which is based on a lack of personal knowledge, is inadmissible.

[42] (*Compare* Dkt. No. 13, Attach. 21, at ¶ 62 [Def.'s Rule 7.1 Statement, asserting and supporting above-stated fact] *with* Dkt. No. 19, at ¶ 62 [Plf.'s Rule 7.1 Response, admitting above-stated fact "in part"].) Any partial denial by Plaintiff is ineffective for each of three alternative reasons.  First, it fails to expressly state that any part of the fact is denied as required by Local Rule 7.1(a)(3).  Second, it fails to specify which part of the fact is denied as also required by Local Rule 7.1(a)(3).  *Aktas*, 877 F. Supp. 2d at 5 n.3.  Third, the record evidence cited by Plaintiff does not actually controvert the fact that Sgt. Marshall addressed the incident;

63. The deputy who played the inappropriate video was issued a supervisor's memorandum.[43]

### Plaintiff's Human Rights Complaint and Federal Court Action

64. On June 3, 2014, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant has discriminated against him on the basis of his race and sex; Plaintiff also claimed retaliation for having complained about discriminatory conduct.[44]

65. After investigation, the EEOC determined that it was unable to conclude that the information obtained established a violation of the statutes; the EEOC dismissed the Charge and issued Plaintiff a right to sue letter on July 24, 2014.

---

rather, it appears to challenge the timeliness and adequacy of Sgt. Marshall's response. However, Plaintiff's challenge to the timeliness of Sgt. Marshall's response is not based on personal knowledge but mere speculation, as discussed above in note 41 of this Decision and Order. Moreover, his challenge to the adequacy of Sgt. Marshall's response is a challenge to what Plaintiff perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the word "addressed" means "adequately addressed"). As stated above in note 1 of this Decision and Order, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1, and any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[43]     Plaintiff attempts to deny what he perceives to be an implication of the fact asserted by Defendant (specifically, the implication that the words "was issued a supervisor's memorandum" means "was adequately disciplined"). (Dkt. No. 19, at ¶ 63 [Plf.'s Rule 7.1 Response].) This denial is ineffective for each of the two alternative reasons stated above in note 1 of this Decision and Order. First, a challenge to an implied fact is insufficient to create a genuine dispute of material fact for trial under Local Rule 7.1. Yetman, 2015 WL 4508362, at *10. Second, any additional material fact that a non-movant contends is in dispute must be asserted in a separately numbered paragraph pursuant to Local Rule 7.1(a)(3), which it was not.

[44]     (*Compare* Dkt. No. 13, Attach. 21, at ¶ 64 [Def.'s Rule 7.1 Statement, asserting variation of above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 19, at ¶ 64 [Plf.'s Rule 7.1 Response, denying part of variation of above-stated fact but failing to cite record evidence that controverts above-stated fact].)

66.     Thereafter, on October 24, 2014, Plaintiff filed this employment civil rights action in United States District Court for the Northern District of New York alleging six causes of action against Defendant for violations of Title VII, Section 1981 and the NYSHRL.

### C.     Summary of Parties' Arguments

#### 1.     Defendant's Memorandum of Law in Chief

Generally, in its memorandum of law, Defendant asserts six arguments.  (Dkt. No. 13, Attach. 22 [Def.'s Memo. of Law].)

First, Defendant argues, Plaintiff's First Cause of Action (asserting a hostile work environment claim) must be dismissed for the following reasons: (a) to save that portion of his Title VII claim based on events allegedly occurring before August 7, 2013 (i.e., 300 days before Plaintiff filed his EEOC complaint on June 3, 2014), he must rely on the continuing violation doctrine, but he cannot do so because he cannot establish either (i) that a specific policy or practice caused the alleged discrimination or (ii) that the post-August 7, 2013, portion of his claim (specifically the portion of his claim based events occurring on or after March 14, 2014) is continuous in time with the pre-August 7, 2013, portion of his claim; (b) he cannot establish a sexual harassment claim because (i) the incidents of sexual harassment that he alleges, which constitute mere male-on-male teasing, are not severe enough to alter the conditions of the workplace, and (ii) the incidents in question are too few in number and spread out over too long a time to be pervasive enough to alter the conditions of the workplace; (c) similarly, he cannot establish a racial harassment claim because (i) the incidents of racial harassment that he alleges, the majority of which have only a speculative connection to race, are not severe enough to alter the conditions of his employment, and (ii) the incidents in question are too few in number and spread out over too long a time to be pervasive enough to alter the conditions of his employment;

and (d) in any event, Defendant cannot be liable for either sexual harassment or racial harassment because Plaintiff cannot establish a specific basis for imputing the conduct to Defendant, which had policies prohibiting sexual and racial harassment, reasonable avenues for complaining of such harassment, and a record of investigating and addressing such complaints (commensurate with the evidence discovered).  (*Id.*)

Second, Defendant argues, Plaintiff's Second, Third and Fourth Causes of Action (asserting claims of discrimination under NYSHRL, intentional infliction of emotional distress, and negligent infliction of emotional distress) must be dismissed because of his failure to comply with N.Y. County Law § 5, which requires that a notice of claim be filed with 90 days of the incident giving rise to the claim.  (*Id.*)

Third, Plaintiff's Fifth Cause of Action (asserting a breach-of-contract claim) must be dismissed because (a) under New York State law, an employee may litigate a collective-bargaining-agreement issue directly against an employer only when the employee's union has failed in its duty of fair representation, and (b) here, the collective bargaining agreement has a grievance procedure, and Plaintiff has not asserted a claim against the union.  (*Id.*)

Fourth, Plaintiff's Sixth Cause of Action (asserting a claim of sexual and racial harassment under Section 1981) must be dismissed because (a) Section 1981 deals only with race-based forms of discrimination, and (b) he has failed to establish a racially hostile environment that resulted from the execution of a racially discriminatory policy or custom, for the reasons discussed above in Defendant's first argument.  (*Id.*)

Fifth, Plaintiff cannot establish a claim of retaliation under Title VII because (a) none of Plaintiff's six causes of action assert a claim of retaliation, and the only paragraph of the Complaint that mentions retaliation is Paragraph 21, (b) even if the Complaint could be

construed as asserting a claim of retaliation, Plaintiff cannot establish a prima facie case of

retaliation (which requires him to demonstrate, *inter alia*, a causal link between his protected

activity and an employment action or decision that is adverse to Plaintiff), and (c) even if he did

so, he cannot establish that Defendant's articulated reason for issuing a supervisor's

memorandum was a pretext for retaliation rather than the result of his own misconduct (e.g., his

failure to comply with an order to assist other deputies in moving the transport vehicles).  (*Id.*)

Sixth, Plaintiff is not entitled to punitive damages because, while punitive damages will

normally lie in cases where persons who are sued in their personal capacity recklessly or

carelessly disregarded the plaintiff's rights, punitive damages will never lie against a

municipality.  (*Id.*)

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts three arguments.  (Dkt.

No. 18, Attach. 3 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues, his Title VII claim is not time barred because those events

occurring before August 7, 2013, were continuous in time with, and are of the same nature and

character as, the events occurring after August 7, 2013.  (*Id.*)

Second, Plaintiff argues, he makes out claims for a sexually and racially hostile work

environment under Title VII, Section 1981 and the NYSHRL, for the following reasons: (a)

evidence exists that the incidents of sexual and racial harassment that he alleges were severe

enough to alter the conditions of his employment (i.e., the fact that he has been subjectively and

reasonably offended by being sexually touched by others including his superior officer, his

having a poster of Martin Luther King Jr. ripped down, his hearing a video played that

repeatedly used the racial slur "n----," and others offering him a dollar after they engaged in

racially offensive conduct); (b) evidence exists that the incidents in question were pervasive enough to alter the conditions of his employment (i.e., the fact that he hears sexual jokes on a daily basis, he witnesses sexual touching between males in the Unit, and he has been paired with Deputy A for years despite Plaintiff's reports of sexual touching by Deputy A); (c) a specific basis exists for imputing the harassment to Defendant under Title VII and NYSHRL (i.e., Lt. Raus' inadequate investigation of Plaintiff's claim of sexual harassment by Sgt. B coupled with Lt. Raus' remark that alpha dogs control a pack by making the other dogs submit, as well as Captain Caiella's endorsement of Sgt. Marshall's responding to the racial-slur incident by merely issuing a supervisor's memorandum instead of formal discipline); and (d) evidence exists that the harassment derived from a municipal policy or practice sufficient to render Defendant liable under Section 1981 (i.e., the severity of the individual incidents and/or the continuous and concerted nature of the incidents). (*Id*.)

Third, Plaintiff argues, he can establish a claim for retaliation under Title VII because (a) evidence exists that Plaintiff complained of Sgt. B's conduct to supervisors in early 2012 and again on March 14, 2014, (b) evidence exists that Plaintiff was disciplined by receiving a supervisor's memorandum from Sgt. B on April 7, 2014, and (c) the Second Circuit has found a causal connection between protected activity and adverse action where a delay of eighth months existed between the two events. (*Id*.)

### 3. Defendant's Reply Memorandum of Law

Generally, his its reply memorandum of law, Defendant asserts three arguments. (Dkt. No. 22, Attach. 1 [Def.'s Reply Memo. of Law].)

First, Defendant argues, Plaintiff has failed to meet the standard necessary to defeat Defendant's motion for summary judgment for the following reasons: (a) Plaintiff cannot create

a genuine dispute of material fact by relying on the allegations of his unverified Complaint; (b) Plaintiff cannot create a genuine dispute of material fact by relying on self-serving affidavit testimony of May 16, 2016, that contradicts his deposition testimony of November 25, 2015, and December 9, 2015; (c) Plaintiff cannot create a genuine dispute of material fact by relying on years-old events that were referenced for the first time in his affidavit and were never alleged in either his Complaint or interrogatory responses; (d) Plaintiff cannot create a genuine dispute of material fact by relying on evidence that he promised to but failed to produce (specifically, the copy of the written report that he alleges was typed in December 2011 with the assistance of Sgt. Marshall, who Marshall denies having provided such assistance); and (e) Plaintiff cannot create a genuine dispute of material fact by relying the affidavit testimony of Brian Hall stating that, on one occasion "[s]ometime between 2013-2014," *Hall* witnessed three superior officers laughing and "grabbing each other's butts."  (*Id.*)

Second, Defendant argues, Plaintiff cannot establish a retaliation claim for the following reasons: (a) Defendant has clearly presented a legitimate, non-discriminatory reason for issuing Plaintiff a supervisor's memorandum of April 7, 2014 (i.e., Plaintiff's admitted failure to comply with a direct order to assist other deputies in moving the transport vehicles on March 12, 2014); (b) because Defendant has articulated a legitimate, non-discriminatory reason for issuing Plaintiff a supervisor's memorandum, the presumption of discrimination dissipates and Defendant is entitled to summary judgment unless Plaintiff can produce evidence that reasonably supports a finding of retaliation; (c) the closest that Plaintiff comes to producing such evidence is his bald assertion that his fellow deputies were directed to write false reports (between March 13, 2014, and April 7, 2014), which is completely speculative and not based on personal knowledge.  (*Id.*)

Third, Defendant argues, Plaintiff's Second, Third, Fourth, Fifth and Sixth Causes of Action should be dismissed, because (a) Defendant challenged those claims in its memorandum of law in chief, (b) Plaintiff did not respond to those challenges in his opposition memorandum of law, and (c) under such circumstances, courts may deem such claims to be abandoned, *see Taylor v. City of New York*, 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003). (*Id.*)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[45] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

---

[45] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[46]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[47]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

---

[46]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[47]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[48] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B. Legal Standard Governing Plaintiff's Claims

Because the parties have (in their memoranda of law) demonstrated an adequate familiarity with the legal standards governing Plaintiff's claims, the Court will not recite in detail those legal standards in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will discuss those legal standards only where necessary below, in Part III of this Decision and Order.

---

[48]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

## III.     ANALYSIS

### A.     Plaintiff's First Causes of Action (Asserting Claim Under Title VII)

#### 1.     Alleged Sexual Harassment

Beginning with the continuing violation doctrine, the Court has trouble finding that admissible record evidence exists from which a rational fact-finder could conclude that many of the pre-August 7, 2013, events giving rise to Plaintiff's Title VII sexual-harassment claim were continuous in time with the post-August 7, 2013, events giving rise to that claim (such that they may be considered by the Court in evaluating the merits of Plaintiff's Title VII sexual-harassment claim).

Granted, Plaintiff has adduced evidence that some of the misconduct has occurred continually, that is, both before and after August 7, 2013 (i.e., 300 days before Plaintiff filed his EEOC complaint on June 3, 2014): (1) Deputy A allegedly poking his finger in Plaintiff's ear on a daily basis;[49] (2) Plaintiff's allegedly witnessing sexually explicit graffiti involving a man's penis on the dry-erase board in the Roll Call Room on a continual basis;[50] and (3) Plaintiff's allegedly hearing sexually laced language, including language about "blow jobs," used by deputies (particularly Deputy A) on a continual basis.[51]  However, the first form of misconduct hardly appears to be sexual in nature; and the second and third forms of misconduct were apparently not directed exclusively at male deputies.[52]

---

[49]     (Dkt. No. 18, Attach. 1, at ¶ 11 [Plf.'s Affid.].)

[50]     (Dkt. No. 18, Attach. 1, ¶¶ 6, 20, 21 [Plf.'s Affid.].)

[51]     (Dkt. No. 18, Attach. 1, at ¶¶ 6, 74 [Plf.'s Affid.].)

[52]     (Dkt. No. 18, Attach. 1, ¶¶ 20-23, 75 [Plf.'s Affid.].) Indeed, the Court notes that Plaintiff admits that such sexual jokes are made while both males and females are present, and that on one occasion a female deputy overheard one of the sexual jokes.  (Dkt. No. 18, Attach. 1, at ¶ 75 [Plf.'s Affid.].)

Furthermore, Plaintiff has adduced evidence that perhaps the most-egregious misconduct occurred before August 7, 2013: (1) Deputy A allegedly giving Plaintiff the "polish handshake" (which Plaintiff describes as a man reaching underneath another man's buttocks from behind and grabbing the other man's penis) on one occasion in 2000-2001 (or perhaps on multiple occasions first in 2008 or 2009);[53] (2) Deputy A allegedly pushing a writing pen into Plaintiff's anus on another occasion in 2000-2001;[54] and (3) Deputy B allegedly grabbing Plaintiff in a "bear hug," collapsing him over a table and "hump[ing]" him from behind in 2000-2002.[55] However, these claims could have been asserted in Plaintiff's prior employment civil rights action, triggering the doctrine of claim preclusion. Moreover, the bulk of this alleged misconduct predates the post-August 7, 2013, misconduct by more than a decade.[56]

Having said that, the Court finds that Sgt. B's alleged misconduct of December 2011 (in which he allegedly "swiped his hand up [Plaintiff's] butt") is sufficiently close in time and similar in nature to the alleged post-August 7, 2013, events (which are alleged to have occurred on an almost-daily basis, as of at least August 7, 2013) to be appropriately considered.[57]

---

[53]  (Dkt. No. 18, Attach. 1, ¶¶ 6, 8, 10 [Plf.'s Affid.]; *cf.* Dkt. No. 13, Attach. 4, at 68 [attaching page "67" of Plf.'s Depo. Tr., stating the "first time" he was given the "polish handshake" was "[b]ack in 2008, 2009" by Deputy A].)

[54]  (Dkt. No. 18, Attach. 1, ¶¶ 6, 8 [Plf.'s Affid.].)

[55]  (Dkt. No. 18, Attach. 1, ¶¶ 6, 10, 12 [Plf.'s Affid.].)

[56]  The Court notes that this misconduct was not alleged in Plaintiff's Complaint; and, despite being asked for in Defendant's interrogatory responses, it was not asserted in Plaintiff's interrogatory responses. (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 13, Attach. 6, at 3 [Plf.'s Interrogatory Response Nos. 3, 7].) However, it was subsequently asserted during Plaintiff's deposition. (*See, e.g.,* Dkt. No. 13, Attach. 4, at 22, 33, 67-69, 123, 143 and 152 [attaching pages "21," "32," "66," "67," "68," "122," "142," and "151" of Plf.'s Depo. Tr.].) While the Court disapproves of such a litigation practice, it will not preclude this late-blossoming deposition testimony absent a motion to preclude it.

[57]  (Dkt. No. 18, Attach. 1, ¶ 27 [Plf.'s Affid.].)

Moreover, the Court finds that the alleged "polish handshake" of 2000-2001 (or perhaps 2008 or 2009) may be appropriately considered to the extent it explains Plaintiff's allegedly re-victimization at having to witness Deputy A give other deputies the "polish handshake" on an almost-daily basis after August 7, 2013.[58]

As a result, the Court finds that the following alleged misconduct may be considered in support of Plaintiff's Title VII sexual-harassment claim: (1) Sgt. B's allegedly "swip[ing] his hand up [Plaintiff's] butt" in December 2011;[59] (2) Sgt. B's allegedly grabbing Plaintiff's buttocks near a fax machine as Sgt B pretended to fall or stumble in the Transport Control Room at some point between 2012 and April 2014;[60] (3) Sgt. B's allegedly putting his hands on Plaintiff's shoulders at a fax machine as Sgt. B was exiting the Transport Control Room during the first week of March 2014;[61] (4) Plaintiff's allegedly witnessing of a photograph posted in the

---

[58] (Dkt. No. 18, Attach. 1, at ¶¶ 6, 10 [Plf.'s Affid.].) The Court renders this finding with some reservation, because Plaintiff's witnessing of the almost-daily misconduct by Deputy A was not alleged in Plaintiff's Complaint; and, despite being asked for in Defendant's interrogatories, it was not asserted in Plaintiff's interrogatory responses. (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 13, Attach. 6, at 3 [Plf.'s Interrogatory Response Nos. 3, 7].) Nor has Plaintiff pointed to any page of his deposition transcript in which he testified that he witnesses Deputy A give other deputies the "polish handshake" on an almost-daily basis. Rather, he testified in his deposition that he witnessed *Deputy B* engage in such conduct. (Dkt. No. 13, Attach. 4, at 33 [attaching page "32" of Plf.'s Depo. Tr.].) Moreover, he testified that the experience of witnessing such conduct did not bother Plaintiff: "I witnessed [Deputy B] touch other people . . . . But as long as it wasn't happening to me I was okay." (Dkt. No. 13, Attach. 4, at 33 [attaching page "32" of Plf.'s Depo. Tr.].) However, the Court reads Plaintiff's deposition testimony as referring to his experience of witnessing other deputies receiving a "polish handshake" from Deputy B, *before* Plaintiff himself received a "polish handshake" from Deputy A. Again, while the Court disapproves of the practice of adducing late-blossoming affidavit testimony, the Court will not preclude this particular piece of testimony under the circumstances absent a motion to preclude it.

[59] (Dkt. No. 18, Attach. 1, ¶ 27 [Plf.'s Affid.].)

[60] (Dkt. No. 18, Attach. 1, at ¶¶ 49-51 [Plf.'s Affid.]; Dkt. No. 13, Attach. 11, at 2 [attaching Ex. C-1 to Caiella Affid.]; Dkt. No. 13, Attach. 11, at 7 [attaching Ex. C-4 to Caiella Affid.].)

[61] (Dkt. No. 18, Attach. 1, at ¶ 51 [Plf.'s Affid.].)

Transport Roll Call Area showing a male rookie officer inside of, and handcuffed to, a grocery cart in the spring of 2014;[62] (5) Deputy A's allegedly punching Plaintiff in the right thigh in an unprovoked manner in an apparent effort to give him a "charlie horse" on October 25, 2014;[63] (6) Plaintiff's allegedly being paired with Deputy A even after his complaint of Deputy's A punching him;[64] and (7) Plaintiff's allegedly witnessing Deputy A give other deputies the "polish handshake" on an "almost daily" basis, which makes Plaintiff "re-live [his] experiences [of 2000-2001 or perhaps 2008-2009] with [Deputy A]."[65]

Turning to the merits of Plaintiff's Title VII sexual-harassment claim, the first issue that the Court must address is whether the above-listed alleged conduct was "because of [Plaintiff's] sex" under Title VII. The fact that the alleged conduct occurred among males and was heterosexual in nature is not determinative. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (Scalia, J.) ("[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. . . . A same-sex harassment plaintiff may . . . , of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."). Rather, the issue is whether the alleged conduct was "because of [Plaintiff's] sex" under Title VII. The Court can find little, if any, sex-based motivation with regard to the photograph and thigh-punching incident. However, the Court notes that some of the other alleged conduct involved direct contact with intimate body parts. Moreover, the Court notes that the alleged direct contact occurred between males, and that there appears to be a dearth of record evidence that females received similar physical treatment

---

[62]     (Dkt. No. 18, Attach. 1, at ¶ 64 [Plf.'s Affid.].)

[63]     (Dkt. No. 13, Attach. 16, at 4-5 [Ex. H to Caiella Affid.].)

[64]     (Dkt. No. 18, Attach. 1, at ¶ 65 [Plf.'s Affid.].)

[65]     (Dkt. No. 18, Attach. 1, at ¶¶ 6, 10 [Plf.'s Affid.].)

(e.g., involving the grabbing of their genitalia) by males. Under the circumstances, for the sake of brevity, the Court will assume that admissible record evidence exists (albeit barely) from which a rational fact-finder could conclude that this conduct was "because of [Plaintiff's] sex" under Title VII. *See, e.g., Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 116, 119 (2d Cir. 2013) (finding question of fact existed regarding male plaintiff's Title VII sex-discrimination claim based on, *inter alia*, record evidence that heterosexual male supervisor grabbed male plaintiff's testicles on one occasion during a work-related argument, and that male supervisor hit male plaintiff and other male employees in the crouch on other occasions).

The second issue that the Court must address is whether the alleged conduct was sufficiently severe to alter the conditions of the workplace. In deciding this issue, the Court must take into account the fact that the conduct is allegedly occurring in a sheriff's office that Plaintiff has conceded is a paramilitary organization. *See Oncale*, 523 U.S. at 81-82 ("In same-sex . . . harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field–even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office.") (internal quotation marks and citation omitted). However, the Court must also remember that the Second Circuit has explicitly held that "[d]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 180 (2d Cir. 2012). As a result, again for the sake of brevity, the Court will assume that the first, second and seventh forms of alleged misconduct described above were, when considered together,

sufficiently severe to alter the conditions of Plaintiff's workplace (again albeit barely).[66]

The third issue that the Court must address is whether the alleged conduct was sufficiently pervasive to alter the conditions of the workplace. While the first and second forms of alleged misconduct (which occurred in December 2011 and February 2014) were hardly pervasive, they must be considered together with the seventh form of alleged misconduct, which Plaintiff allegedly witnessed on an "almost daily" basis as of May 2016 (the date of his affidavit). Under the circumstances, again for the sake of brevity, the Court will assume that the alleged misconduct was sufficiently pervasive to alter the conditions of Plaintiff's workplace (again albeit barely).

The final issue that the Court must address is whether admissible record evidence exists from which a rational fact-finder could conclude that a specific policy or practice caused the alleged sexual discrimination, sufficient to impute the conduct to Defendant. After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in its memoranda of law (including the fact that Defendant had policies prohibiting sexual harassment, reasonable avenues for complaining of such harassment, and a record of investigating and addressing such complaints, commensurate with the evidence discovered). *See, supra,* Part I.C.1. and I.C.3. of this Decision and Order. To those reasons, the Court adds the following analysis (which is meant to supplement and not supplant Defendant's reasons).

Beginning with the first and second forms of alleged misconduct, while these forms of misconduct were committed by a supervisor, they do not evidence a policy or practice of

---

[66]     The Court notes that, while Plaintiff asserts that witnessing the alleged misconduct re-victimizes him, the last time that he received a so-called "polish handshake" was, by his own account, in 2000-2001 (or perhaps 2008-2009).

Defendant causing the alleged sexual discrimination because (setting aside Defendant's written policy prohibiting such misconduct) Plaintiff's complaint about the misconduct resulted in a rather thorough investigation by Defendant (involving, *inter alia*, Sgt. Marshall's interviews of Plaintiff, Sgt. B and several other members of the Transport Unit, Sgt. Marshall's search of records, and Lt. Raus's interviews of all members of the Transport Unit). The mere fact that Plaintiff disagrees with the conclusions drawn by Sgt. Marshall and Lt. Raus does not mean that Defendant had a policy or practice that caused the alleged misconduct. *See Frenkel v. New York City Off-Track Betting Corp.*, 701 F. Supp.2d 544, 553 (S.D.N.Y. 2010) ("Plaintiff vehemently disagrees with the conclusions reached as a result of those investigations, but neither his disagreement with those conclusions nor his own conclusory allegations of insufficient investigation or bias are sufficient to make out the requisite demonstration of policymaker acquiescence in a longstanding discriminatory policy or custom.").

Turning to the seventh form of alleged misconduct, Plaintiff witnessed this form of misconduct being committed during the time in question by a fellow deputy (not a supervisor); furthermore, no admissible record evidence exists that Plaintiff *complained* to Defendant about witnessing this alleged misconduct during the time in question. In his deposition, Plaintiff testified that he reported Deputy A's giving the "polish handshake" *to Plaintiff* in *2008 or 2009*, not that he reported witnessing (and feeling victimized by) Deputy A's giving the "polish handshake" to *other deputies* subsequently, specifically, *between August 2013 and May 2015*. (Dkt. No. 13, Attach. 4, at 68-69, 71, 123-24 [attaching pages "67," "68," "70," "122" and "123"

of Plf.'s Depo. Tr.].)[67]  Moreover, in his deposition, Plaintiff testified that *in 2008-2009* "people" (including Sgt. B) witnessed the alleged misconduct, not that *subsequently* (again, between August 2013 and May 2015) supervisors witnessed it.  (*Id*. at 123 [attaching page "123" of Plf.'s Depo. Tr.].)  Similarly, in his affidavit, Plaintiff asserts that he "see[s] [Deputy A] . . . [give the 'polish handshake'] to others," not that his supervisors see Deputy A do it.[68]

In any event, more importantly, the reports filed by Plaintiff do not complain about witnessing this alleged misconduct between others.  (*See generally* Dkt. No. 13, Attach. 11, at 2-10 [Exs. C-1 through C-7 to Caiella Affid.]; Dkt. No. 13, Attach. 15, at 2 [Ex. G to Caiella Affid.]; Dkt. No. 13, Attach. 16, at 5 [Ex. H-4 to Caiella Affid.]; Dkt. No. 13, Attach. 17, at 2 [Ex. I to Caiella Affid.].)  If Defendant was not notified that Plaintiff was feeling victimized by witnessing this alleged misconduct between others, it is difficult to conclude that Defendant is responsible for failing to appropriately respond to the feeling of victimization.[69]  Under the circumstances, the Court finds that, based on the current record, no rational fact-finder could conclude that Defendant had a specific policy or practice that caused the alleged sexual discrimination.

For all of these reasons, Plaintiff's Title VII sexual-harassment claim is dismissed.

---

[67]  The Court notes that Plaintiff acknowledges that, after he filed the above-described report (of which he does not have a copy), the conduct stopped happening to him. (Dkt. No. 13, Attach. 4, at 71-72 [attaching pages "70" and "71" of Plf.'s Depo. Tr.].)

[68]  (Dkt. No. 18, Attach. 1, at ¶ 10 [Plf.'s Affid.].)

[69]  The Court notes that Plaintiff acknowledges that, in 2007-2008, in response to being told by Deputy W to "scratch" his balls, Plaintiff grabbed Deputy W's groin and pulled. (Dkt. No. 18, Attach. 1, ¶ 18 [Plf.'s Affid.].)  This fact would appear to make it even less reasonable to hold Defendant liable for failing to intuit Plaintiff's feeling of vicarious victimization.

## 2. Alleged Racial Harassment

Beginning with the continuing violation doctrine, the Court has trouble finding that admissible record evidence exists from which a rational fact-finder could conclude that the pre-August 7, 2013, portion of Plaintiff's Title VII racial-harassment claim was continuous in time with the post-August 7, 2013, portion of that claim, given the nearly twenty-six-month lapse between the alleged misconduct in mid-to-late December 2011 (involving Sgt. B's alleged swiping of a bladed hand in between Plaintiff's buttocks) and the alleged misconduct in mid-February 2014 (involving Sgt. B's alleged grabbing Plaintiff's buttocks as Sgt. B fell or stumbled). Moreover, it is difficult to imagine how the first form of alleged misconduct (or the second one) is racial in nature.

Having said that, the Court finds that certain other conduct, which pre-dates December 2011, appears sufficiently racial in nature and proximate to August 7, 2013, in time to be considered by the Court in evaluating the merits of Plaintiff's Title VII racial-harassment claim: specifically, Plaintiff finding spit on his locker, his finding his mail thrown in the trash, his finding his picture of Martin Luther King, Jr., torn down from his locker, and his being told "Let me give you my dollar now" a few days after his prior trial ended in February 2010.[70]

As a result, the Court finds that the following alleged misconduct may be considered in support of Plaintiff's Title VII racial-harassment claim: (1) Plaintiff allegedly finding spit on his locker, his finding his mail thrown in the trash, his finding his picture of Martin Luther King, Jr., torn down from the outside of his locker, and his being old "Let me give you my dollar now"

---

[70]     (Dkt. No. 18, Attach. 1, at ¶¶ 25-26 [Plf.'s Affid.].)

during the weeks after his prior race-discrimination trial ended in February 2010;[71] (2) Plaintiff allegedly being passed over for overtime on several unspecified occasions in 2012 by Sgt. B, Sgt. Marshall, Sgt. Ames and Lt. Raus, while a white deputy with less seniority (Deputy Feldman) was given more overtime;[72] (3) Sgt. B's allegedly blocking Plaintiff's way as Plaintiff was attempting to pass on an unidentified occasion in approximately 2013, requiring Plaintiff to ask permission to pass;[73] (4) Sgt. B's allegedly grabbing Plaintiff's buttocks near the fax machine as Sgt B pretended to fall or stumble in the Transport Control Room at some point between 2012 and April 2014;[74] (5) Lt. Raus allegedly smirking when Plaintiff said he thought Lt. Raus was a racist on an unidentified occasion in 2013 or 2014;[75] (6) Sgt. B's allegedly putting his hands on Plaintiff's shoulders at the fax machine as Sgt. B was exiting the Transport Control Room in the first week of March 2014;[76] (7) Sgt. B's allegedly assigning Plaintiff to shovel snow off of, and move, transport vehicles on March 12, 2014;[77] (8) Deputy A's allegedly punching Plaintiff in the

---

[71]    (Dkt. No. 18, Attach. 1, at ¶¶ 25-26 [Plf.'s Affid.]; Dkt. No. 13, Attach. 4, at 171, 173, 175 [attaching pages "169," "171" and "173" of Plf.'s Depo. Tr.].)

[72]    (Dkt. No. 18, Attach. 1, at ¶¶ 43-46 [Plf.'s Affid.]; Dkt. No. 13, Attach. 4, at 198-99 [attaching pages "196" and "197" of Plf.'s Depo. Tr.].)

[73]    (Dkt. No. 18, Attach. 1, at ¶¶ 53-55 [Plf.'s Affid.]; Dkt. No. 13, Attach. 4, at 38-39 [attaching pages "36" and "37" of Plf.'s Depo. Tr.].)

[74]    (Dkt. No. 18, Attach. 1, at ¶¶ 49-51 [Plf.'s Affid.]; Dkt. No. 13, Attach. 11, at 2 [attaching Ex. C-1 to Caiella Affid.]; Dkt. No. 13, Attach. 11, at 7 [attaching Ex. C-4 to Caiella Affid.]; Dkt. No. 13, Attach. 4, at 99 [attaching page "97" of Plf.'s Depo. Tr.].)

[75]    (Dkt. No. 18, Attach. 1, at ¶ 63 [Plf.'s Affid.]; Dkt. No. 13, Attach. 4, at 201-03 [attaching pages "199" through "201" of Plf.'s Depo. Tr.].)

[76]    (Dkt. No. 18, Attach. 1, at ¶ 51 [Plf.'s Affid.].)

[77]    (Dkt. No. 18, Attach. 1, at ¶¶ 56-61 [Plf.'s Affid.].)

right thigh in an unprovoked manner in an apparent effort to give him a "charlie horse" on October 25, 2014;[78] (9) Plaintiff's allegedly being paired with Deputy A even after his complaint of Deputy's A punching him;[79] (10) Plaintiff's alleged viewing of a video in which the word "N----" was used in June 2015;[80] (11) the alleged coercion by four or five white deputies of other white deputies not to work with Plaintiff;[81] and (12) Plaintiff allegedly being assigned by Sgt. B to put fliers or paperwork in a mailbox on one or more unidentified occasions, while white deputies were not assigned to do so.[82]

Turning to the merits of Plaintiff's Title VII sexual-harassment claim, the first issue that the Court must address is whether the above-listed alleged conduct was "because of [Plaintiff's] sex" under Title VII. The Court can find little, if any, race-based motivation with regard to the third, fourth, sixth, eighth and ninth forms of alleged misconduct. However, the Court notes that Plaintiff's theory appears to be that he was singled out for attention and abuse because he was the only African-American on his shift, casting the aforementioned forms of alleged misconduct in a different light. Moreover, the remaining forms of alleged misconduct, while sometimes vague, appear more clearly motivated by race. As a result, under the circumstances, for the sake of brevity, the Court will assume that admissible record evidence exists from which a rational fact-finder could conclude that this conduct was "because of [Plaintiff's] race" under Title VII.

---

[78]     (Dkt. No. 13, Attach. 16, at 4-5 [Ex. H to Caiella Affid.].)

[79]     (Dkt. No. 18, Attach. 1, at ¶ 65 [Plf.'s Affid.].)

[80]      (Dkt. No. 18, Attach. 1, at ¶ 70 [Plf.'s Affid.].)

[81]     (Dkt. No. 18, Attach. 1, at ¶ 19 [Plf.'s Affid.].)

[82]     (Dkt. No. 18, Attach. 1, at ¶ 48 [Plf.'s Affid.]; Dkt. No. 13, Attach. 4, at 37-38 [attaching pages "35" and "36" of Plf.'s Depo. Tr.].)

The second issue that the Court must address is whether the alleged conduct was sufficiently severe to alter the conditions of the workplace. The Court can find little, if any, severity with regard to the third, fourth, fifth, sixth, eighth and ninth forms of alleged misconduct. However, the Court cannot render the same finding with regard to the first, second, seventh, tenth, eleventh and twelfth forms of alleged misconduct. As a result, for the sake of brevity, the Court will assume that the forms of alleged misconduct described above were, when considered together, sufficiently severe to alter the conditions of Plaintiff's workplace.

The third issue that the Court must address is whether the alleged conduct was sufficiently pervasive to alter the conditions of the workplace. Most of the forms of alleged misconduct were relatively spread out, occurring in around February 2010 (first form), one or more times in 2012 (second form), sometime in 2013 (third form), at some point between 2012 and April 2014 (fourth form), sometime in 2013 or 2014 (fifth form), the first week of March 2014 (sixth form), second week of March 2014 (the seventh form), the end of October 2014 (the eighth form), and June 2015 (the tenth form). However, the remaining forms of alleged misconduct occurred on a continual basis (the ninth, eleventh and twelfth forms). Under the circumstances, again for the sake of brevity, the Court will assume that the alleged misconduct was sufficiently pervasive to alter the conditions of Plaintiff's workplace.

The final issue that the Court must address is whether admissible record evidence exists from which a rational fact-finder could conclude that a specific policy or practice caused the alleged racial discrimination, sufficient to impute the conduct to Defendant. After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in its memoranda of law (including the fact that Defendant had policies prohibiting

racial harassment, reasonable avenues for complaining of such harassment, and a record of investigating and addressing such complaints, commensurate with the evidence discovered). *See, supra,* Part I.C.1. and I.C.3. of this Decision and Order. To those reasons, the Court adds the following analysis (which is meant to supplement and not supplant Defendant's reasons).

The record before the Court contains copious evidence of both (1) Defendant's efforts to investigate the selected forms of alleged misconduct that Plaintiff chose to report,[83] and (2) Defendant's response to what it found to be inappropriate conduct.[84] As stated above in Part III.A. of this Decision and Order, Defendant cannot fairly be held responsible for conduct that was not reported to it. Furthermore, the mere fact that Plaintiff disagrees with the conclusions drawn by Defendant after its investigations does not mean that Defendant had a policy or practice that caused the alleged misconduct. *Frenkel*, 701 F. Supp.2d at 553. Under the circumstances, the Court finds that, based on the current record, no rational fact-finder could conclude that Defendant had a specific policy or practice that caused the alleged racial discrimination.

For all of these reasons, Plaintiff's Title VII racial-harassment claim is dismissed.

---

[83] *See, supra,* Fact Nos. 45, 50, 51, 53-55, 58, 60 in Part I.B. of this Decision and Order. (*See also* Dkt. No. 13, Attach. 10 [Exs. B-1 through B-14 to Caiella Affid.]; Dkt. No. 13, Attach. 11 [Exs. C-1 through C-18 to Caiella Affid.]; Dkt. No. 13, Attach. 12 [Ex. D to Caiella Affid.]; Dkt. No. 13, Attach. 13 [Ex. E to Caiella Affid.]; Dkt. No. 13, Attach. 14 [Ex. F to Caiella Affid.]; Dkt. No. 13, Attach. 15 [Ex. G to Caiella Affid.]; Dkt. No. 13, Attach. 16 [Ex. H to Caiella Affid.]; Dkt. No. 13, Attach. 17 [Ex. I to Caiella Affid.]; Dkt. No. 13, Attach. 18 [Ex. J to Caiella Affid.].)

[84] *See, supra,* Fact Nos. 32, 33, 47, 55, 56, 62, 63 in Part I.B. of this Decision and Order.

**B.** **Plaintiff's Second, Third, Fourth and Fifth Causes of Action (Asserting Claims of Violation of the NYSHRL, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Breach of Contract)**

In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Alternatively, the court can deem a challenged but undefended claim abandoned (regardless of the facial merit of the unresponded-to argument). *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made–i.e., referencing some claims or defenses but not others–a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses.").

Here, after carefully considering the matter, the Court dismisses Plaintiff's Second, Third, Fourth and Fifth Causes of Action (asserting claims of discrimination under the NYSHRL, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract), because Defendant's challenges to them have facial merit (for the reasons stated in Defendant's memorandum of law in chief (*see, supra,* Part I.C.1. of this Decision and Order) and Plaintiff has failed to oppose those challenges. Alternatively, the Court dismisses Plaintiff's Second, Third, Fourth and Fifth Causes of Action as abandoned, finding that the choice of Plaintiff's counsel to carefully defend some claims but not others was deliberate.

For all of these reasons, Plaintiff's Second, Third, Fourth and Fifth Causes of Action are dismissed.

### C.      Plaintiff's Sixth Cause of Action (Asserting Claim Under Section 1981)

As an initial matter, the Court disagrees with Defendant that Plaintiff has abandoned his claim under Section 1981, because he references it three times in his opposition memorandum of law.  (Dkt. No. 18, Attach. 3, at 10, 11, 13 [attaching page "8," "9" and "11" of Plf.'s Opp'n Memo. of Law].)

However, the Court agrees with Defendant for the reasons stated in its memorandum of law in chief (*see, supra,* Part I.C.1. of this Decision and Order) that, to the extent Plaintiff's Section 1981 claim is based on alleged sex-based discrimination, that claim must be dismissed because Section 1981 regards only race-based discrimination.

With regard to that portion of Plaintiff's Section 1981 claim based on alleged race-based discrimination, the Court finds that Plaintiff has not adduced admissible evidence from which a

rational fact-finder could conclude that Defendant had a racially discriminatory policy or custom that caused a racially hostile environment.  The Court renders this finding for the reasons stated in Defendant's memoranda of law and the reasons the Court rejected Plaintiff's Title VII racial-harassment claim.  *See, supra,* Parts I.C.1., I.C.3. and III.A. of this Decision and Order

For all of these reasons, Plaintiff's sixth cause of action is dismissed.

### D.     Plaintiff's Request for Punitive Damages

After carefully considering the matter, the Court dismisses Plaintiff's request for punitive damages on the alternative ground that Defendant's challenge to the request has facial merit (for the reasons stated in Defendant's memorandum of law in chief (*see, supra,* Part I.C.1. of this Decision and Order) and Plaintiff has failed to oppose that challenge.  In addition to the case cited by Defendant, the Court relies on *Johnson v. New York City Health & Hosp. Corp.*, 98-CV-5505, at *3 (S.D.N.Y. Aug. 2, 2000) ("It is equally well settled that punitive damages are unavailable against municipalities in actions under Title VII and §§ 1981 and 1983.") and *Brennan v. City of White Plains*, 67 F. Supp.2d 362, 378 (S.D.N.Y. 1999) ("Punitive damages cannot be recovered under the Human Rights Law against any defendant . . . .") (citation omitted).  Alternatively, the Court dismisses Plaintiff's request for punitive damages as abandoned, finding that the choice of Plaintiff's counsel to carefully defend some claims but not that request was deliberate.

For all of these reasons, Plaintiff's request for punitive damages is dismissed.

### E.     Any Retaliation Claim Asserted by Plaintiff

As argued by Defendant, the word "retaliate" appears only twice in Plaintiff's Complaint (i.e., in the first and sixth sentences of Paragraph 21) and nowhere in its Causes of Action

Section.  (*See generally* Dkt. No. 1, ¶¶ 7-51 [Plf.'s Compl.].)  While a *pro se* complaint must be extra-liberally construed as asserting all claims consistent with its factual allegations,[85] a counseled litigant's complaint need not be so construed.  Rather, a counseled litigant is the master of his own complaint,[86] which need be construed with only ordinary liberality.[87]  Here, even liberally construing Plaintiff's Complaint, the Court finds that the omission of the word "retaliate" (or the notion of retaliation) from the well-pleaded Causes of Action Section of the Complaint is conspicuous, reasonably leading a defendant (and the Court) to conclude that Plaintiff had consciously chosen *not* to assert a claim of retaliation.[88]  For this reason alone, this late-blossoming claim can be, and is, dismissed.

In any event, even if the Court were to liberally construe the Complaint as asserting such a claim, it would dismiss the claim for the reasons stated by Defendant in its memoranda of law: Plaintiff cannot establish a causal link between his protected activity on March 14, 2014, and his receipt of a supervisor's memorandum on April 7, 2014, which would have been issued by Sgt. B anyway due to Plaintiff's admitted failure to comply with a direct order to assist other deputies

---

[85]    The Court notes that *all* claims must be liberally construed. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  It is only claims by *pro se* litigants (or civil rights litigants) that must be *extra-liberally* construed, that is, construed with special solicitude or special leniency. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).

[86]    *See Hochroth v. William Penn Life Ins. Co. of New York*, 03-CV-7286, 2003 WL 22990105, at *2 (S.D.N.Y. Dec. 19, 2003) ("It is well established that the plaintiff is the 'master of his complaint' and may characterize his causes of action as he pleases.").

[87]    *See, supra,* note 49 of this Decision and Order.

[88]    This conclusion is especially reasonable when one considers Plaintiff's experience of suffering the consequences, in a prior action before the undersigned, of failing to assert a claim of sexual harassment in his EEOC complaint.  *Willis v. Onondaga Cty. Sheriff's Dep't*, 04-CV-0828, Minute Entry for Day 1 of Jury Trial (N.D.N.Y. filed Feb. 22, 2010).

in moving the transport vehicles (even after he came on duty, according to his own version of events). *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court notes that three of the reports written by Plaintiff's fellow deputies to Sgt. B (regarding the incident on March 12, 2014) were dated March 13, 2014–a day before Plaintiff wrote his report of March 14, 2014, regarding the incident–further establishing that the impetus for Sgt. B's supervisor's memorandum predated Plaintiff's report. (Dkt. No. 13, Attach. 10, at 7, 8, 9.)

As yet another alternative ground for dismissing this claim, the Court finds that, by itself, the receipt of a supervisor's memorandum (which was not formal discipline and could be, and was, issued by a sergeant or higher ranking officer without the Administration's approval) was not a sufficiently serious adverse employment action for purposes of Plaintiff's retaliation claim. *Cf. Vandesande v. Miami-Dade Cty.*, 431 F. Supp.2d 1245, 1254 (S.D. Fla. 2006) (finding that supervisor's memorandum to county firefighter regarding his excessive cell phone usage during training and other aspects of his behavior that were allegedly bordering on insubordination did not constitute "adverse employment actions" necessary to support retaliation claim under Fair Labor Standards Act, because memorandum did not cause firefighter any present or foreseeable future injury).

For all of these reasons, any retaliation claim asserted by Plaintiff is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 13) is **GRANTED**, and Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 6, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge